IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROCKETT SPECIAL UTILITY DISTRICT, *a political subdivision in the State of Texas*, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:25-CV-1665-RP |
| THOMAS J. GLEESON, KATHLEEN JACKSON, and COURTNEY K. HJALTMAN, *in their official capacities as Commissioners of the Public Utility Commission Of Texas*, and CONNIE CORONA, *in her official capacity as Executive Director of the Public Utility Commission of Texas*, | § § § § § § § § § § § § | |
| Defendants. | § | |

## AMENDED ORDER

Before the Court is Plaintiff Rockett Special Utility District's ("Rockett") Amended Application for Temporary Restraining Order ("TRO").[1] (TRO Mot., Dkt. 20). Defendants Thomas J. Gleeson, Kathleen Jackson, and Courtney K. Hjaltman, in their official capacities as Commissioners of the Public Utility Commission of Texas ("PUCT"), and Connie Corona, in her official capacity as Executive Director of the PUCT (collectively, "PUCT Defendants") have been served with the complaint in this action. (Dkts. 16–19). Rockett's counsel also represents that they sent a courtesy copy of this motion to Defendants' attorneys via email. (TRO Mot., Dkt. 20, at 17–18). Counsel for PUCT Defendants made an appearance in this case on November 10, 2025,

---

[1] This Amended Order clarifies in Section IV, *infra*, that, in its discretion, the Court is not requiring Rockett to post bond. No other changes have been made to the Court's November 10, 2025 Order granting Rockett's motion for a TRO, (Dkt. 23). The TRO's date of expiration is unchanged by this Amended Order.

1

subsequent to the filing of Rockett's TRO motion. (Dkts. 21–22). After considering the motion, the supporting evidence, and the relevant law, the Court finds that the motion should be **GRANTED**.

## I. BACKGROUND

Rockett Special Utility District is a political subdivision and agent and instrumentality of the State of Texas. (Compl., Dkt. 1, at 2). Defendants are the Commissioners and Executive Director of the PUCT. The Commissioners are "charged with the primary responsibility for implementing or enforcing state laws relating to the use and conservation of natural resources, environmental protection, and water service." (*Id.* at 2). Rockett "holds Certificate of Convenience and Necessity (CCN) No. 10099 by Order of the PUCT or its predecessor agency, granting Rockett the exclusive right to own and operate a retail public water utility system serving persons and entities located inside Rockett's CCN." (*Id.* at 3). Rockett is federally indebted on loans issued or guaranteed by 7 U.S.C. § 1926(a). Rockett asserts that, pursuant to 7 U.S.C. § 1926, it has the exclusive right to provide water service within its federally recognized service area. (*Id.* at 8).

On November 2, 2022, CTMGT Bear Creek, LLC ("CTMGT") submitted a Nonstandard Service Application for a Bear Creek Ranch Development within Rockett's CCN. (*Id.* at 4). CTMGT later filed a petition for Streamlined Expedited Release ("SER Petition"), which was found administratively complete by the PUCT on September 12, 2025. (*Id.*). The PUCT set a deadline to approve the CTMGT SER Petition for November 12, 2025. (*Id.*). Rockett asserts that, if the CTMGT SER Petition is granted, it would infringe upon Rockett's exclusive federal right to provide water service to customers within its CCN. (*Id.* at 11). Rockett moved to abate the PUCT proceeding pending adjudication of this matter in federal court, but an administrative law judge denied the motion to abate. (*Id.* at 4). Rockett filed this action and a TRO motion, arguing that it is facing irreparable harm, as the granting of the CTMGT SER Petition cannot be retroactively undone. (TRO, Dkt. 20, at 14). It also contends that Texas Water Code § 13.2541 is expressly

preempted by 7 U.S.C. § 1926 and conflict preempted by § 1926. (*Id.*). Rockett's TRO motion is accompanied by the sworn affidavit of Kay Phillips, the General Manager for Rockett, (Dkt. 20-3), and a number of other supporting exhibits.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits the Court to issue a temporary restraining order without notice to the adverse party only where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The party moving for a temporary restraining order must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [temporary restraining order] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The party seeking relief has the burden of proving each element. *Id.* Upon reviewing Rockett's motion, the Court concludes that Rockett has met its burden under Rule 65 and the Fifth Circuit's requirements.

## III. DISCUSSION

The statute invoked by Rockett, 7 U.S.C. § 1926(b), provides that a utility that has received a federal loan under § 1926(a) "enjoys monopoly protection for 'the service provided or made available' by the utility during the term of the loan." *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 323 (5th Cir. 2024). The Fifth Circuit held that this protection provided by § 1926(b) applies only when the loan recipient can show it both "has (1) adequate facilities to provide service to the relevant area within a reasonable time after a request for service is made and (2) the legal right to provide service." *Green Valley Spec. Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 465 (5th Cir.

2020) (en banc). Rockett argues that it meets the two-part *Green Valley* test, and that as a result, the PUCT Defendants' threatened use of Texas Water Code § 13.2541 to limit Rockett's service area violates Rockett's federal rights.

First, the Court finds that the evidence is sufficient at this stage to show that Rockett is substantially likely to prevail on its argument that it has a federal right to provide service to the CTMGT Property under § 1926(b).[2] Rockett cites as support an affidavit from its General Manager, Kay Phillips, and its engineering consultant, Benjamin Shanklin. (TRO Motion, Dkt. 20, at 9; Phillips Aff., Dkt. 20-3, at 3; Shanklin Aff., Dkt. 20-8). Phillips and Shanklin declare in their sworn affidavits that Rockett has sufficient capacity to provide service to the CTMGT property subject to certain offsite improvements. (Phillips Aff., Dkt. 20-3, at 3; Shanklin Aff., Dkt. 20-8, at 2). Phillips claims that Rockett can make these improvements within a reasonable time. (Phillips Aff., Dkt. 20-3, at 3).

Second, there is clearly a substantial threat that irreparable harm will result if the TRO is not granted. Rockett's motion for injunctive relief is pursuant to *Ex parte Young*. "Because the PUC's chairman and commissioners are state officials sued in their official capacities and have not consented to suit, they are protected by sovereign immunity unless their immunity has been abrogated by Congress or the *Ex parte Young* exception applies. . . . and *Young* limits the relief that [Rockett] can seek against the PUC officials to prospective relief." *See Dobbin Plantersville Water Supply Corp.*, 108 F.4th at 325. The Fifth Circuit has expressly held that once the PUCT has released part of a utility district's property from its CCN, "there is no further action or enforcement for the PUC to take." *Id.* at 326. Thus, if the PUCT Defendants grant the CTMGT SER Petition, it will "lose injunctive relief against the PUCT Defendants forever." (TRO Mot., Dkt. 20, at 8). Phillips swears in her affidavit that removing the CTMGT Property from the Rockett CCN "would cause Rockett

---

[2] The Court notes that its finding that Rockett has established a likelihood it will prevail is based solely on Rockett's arguments and could be rebutted by the PUCT Defendants, who have appeared but have not had the opportunity to formally respond to Rockett's TRO Motion.

substantial long-term financial harm, forever shrinking the CCN area for Rockett and its customers." (Phillips Aff., Dkt. 20-3, at 5). The PUCT is set to rule on the CTMGT SER Petition by November 12, 2025—two days from now. Thus, Rockett has met the element of showing imminent irreparable harm.

Third, the balance of hardships favors Rockett. There is no discernable harm to the PUCT Defendants by delaying the ruling on the CTMGT SER Petition pending this federal lawsuit. Finally, Rockett argues that federally indebted water providers seeking to enforce § 1926(b) to preempt state statutes or actions are not required to prove that a TRO serves the public. It nonetheless argues in the alternative that a TRO would serve the public interest, as the federal government and rural customers of Rockett have an interest in § 1926(b)'s protection. Without reaching the question of whether a showing on public interest is required, the Court agrees that granting a TRO here serves the public interest. *See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057, 1060 (5th Cir. 1987) (recognizing that the congressional purposes behind § 1926 were "to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and 2) to safeguard the viability and financial security of such associations . . . by protecting them from the expansion of nearby cities and towns"). Based on these four factors, a TRO is warranted.

## IV. BOND

Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of security required pursuant to Rule 65(c) is "a matter of discretion for a trial court," which "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d

300, 303 (5th Cir. 1978)). Rockett requests the Court to not require bond, asserting that the PUCT Defendants will not suffer any loss or harm in the event they are ordered to not grant the CTMGT SER Petition. (TRO, Dkt. 20, at 16). The Court agrees it is appropriate in this context to "elect to require no security at all," *see id.*, as it appears the PUCT Defendants will not be injured by the Court's issuance of a temporary restraining order.

## V. CONCLUSION

For the reasons given above, it is **ORDERED** that Plaintiff Rockett Special Utility District's Amended Application for Temporary Restraining Order, (Dkt. 20), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Thomas J. Gleeson, Kathleen Jackson, and Courtney K. Hjaltman, in their official capacities as Commissioners of the Public Utility Commission of Texas, and Connie Corona, in her official capacity as Executive Director of the Public Utility Commission of Texas (collectively the PUCT Defendants) are enjoined from granting any petitions for expedited release from Rockett's certificated water service area under Texas Water Code § 13.2541 filed by CTMGT Bear Creek.

**IT IS FURTHER ORDERED** that the PUCT Defendants are enjoined from curtailing Plaintiff Rockett's certificated water service area in PUCT Docket No. 58224.

**IT IS FINALLY ORDERED** that this Order Granting Temporary Restraining Order will expire 14 days from the original date of its issuance, which was November 10, 2025.

**SIGNED** on November 12, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE